Good morning. May it please the Court, I'm Jerome Falk for Appellate. When appellees sell 10 million copies of a best-selling Eminem album, they incur something like $12 million of expenses in manufacturing and distributing that album. When they experience the distribution through digital download of an equivalent number of albums, they incur none of those expenses. And yet they interpret the recording agreement as calling for the same royalties as on CDs. That's what this case is about. Much of their argument between the two royalty provisions that are proffered by the parties here is directed to a red herring. They argue that the revenues from digital downloading fall within the language of the records sold provision. We don't dispute that, but it doesn't take them anywhere. The reason is that the relevant and dispositive question is whether the master's license provision governs the agreements between appellees and the digital downloading providers such as Apple, iTunes. Because if it does, paragraph 4C says that that provision trumps all preceding provisions, which would include the records sold provision. Because 4C begins with the phrase, notwithstanding the foregoing. So the dispositive question is whether the master's licensing provision fits this transaction. I want to emphasize that the relevant transaction here is the agreement between appellees, the recording companies, and the digital download providers, not the individual contracts that Apple or the other downloaders enter into between themselves and their customers. And so the issue is, do these download agreements constitute the licensing of the master recording? The first aspect of the question is whether these agreements are licenses. And that's a pretty simple question. What else could it be? The appellees retain ownership of the digital files that are provided by them to the downloaders. They get recurring benefits in the form of royalties from this single transaction. The digital download providers are given permission, they're given license, to make and distribute copies of the digital files to the end users. The agreements impose restrictions on where this can be done and for how long. In the Apple agreement, for example, which is in the record, it provides that upon expiration, and I think it's about a year in its original term, Apple must return the tangible CDs that are given to them and destroy all digital files that have been made that contain the sound recordings. So in common legal parlance, and to any intellectual property lawyer, this is a license. And there is no evidence in this record that the parties agreed to use the term license here in some nonstandard special way. The second aspect of the question is also cut and dry. Is this license of a master recording? A master is defined in the contract as a recording of sound, which is useful or used or useful in the recording, production, or manufacture of records. That's section 16D. And I don't think there's any dispute that this is a record. So these agreements between appellees and the downloaders are licenses of master recordings, whose royalties are therefore governed by the master's license provision. Now, appellees make three arguments, other than these definitional arguments that I've just covered, against that interpretation of the contract. The first is that the master's license provision, although broad in its wording, in fact only applies to certain types of licenses, and in particular to licenses to use portions of an album or portions of a track of an album in some other product, such as a motion picture or a television program. Those are known as synchronization agreements in the trade, or else licenses to use portions of a recording in a compilation album, best of Chet Baker or some album like that. But there's nothing in the words of the contract to support this crab meaning of the provision. And under the canon of interpretation that we in California have codified as Section 1858 of the Code of Civil Procedure, courts are not to insert what is omitted or omit what has been included. If the parties had meant this definition to apply more narrowly than its words, they would have said so. Scalia. Let me make sure I understand the procedural context in which this came up. If I understand correctly, your side made a motion for summary judgment. Yes. Early on contending that this contract was unambiguous and should be interpreted as you now say. Yes. That was denied, but the judge determined that there was some ambiguity to this. Yes. And there was also a cross motion for summary judgment, and it was denied as well. They said I need extrinsic evidence. And that it is going to be decided by a jury. And it goes to a jury. Correct. And before it goes to the jury, there's no motion made for judgment as a matter of law at this point. Correct. They say you're out of luck as a result of that. That's correct. Okay. What's the answer? The answer to that is that the requirement of a JMOL is a requirement is applicable where the claim is no substantial evidence. This is an issue of law. And the JMOL requirement is never applicable to a to an issue of law. It's applicable only in all the cases that they cite. And these are cases where the insufficiency of the evidence is the issue on appeal and the court of appeals says can't reach that because there was no JMOL motion before and after trial. In fact, Rule 50 itself talks about insufficiency of the evidence in the claims. And as I say, all of the cases say that. We cited the Royal case, R-U-Y-L-E, at page 27 of our opening brief, which stands for this proposition. I think it's they're not that many cases that say it because I think everybody understands that issues of law are raisable without a JMOL. We cited in a supplemental letter of July 6th a number of additional cases. And they support what I said and also support the proposition that where you have an issue of law, an appeal can be taken without a JMOL from the denial of summary judgment, as opposed to a case where the summary judgment is about whether there's a disputed issue of fact or whether the light was red or some other fact issue. Here, the issue is purely a question of interpreting these written words, and so I think we're entitled to present them even though no JMOL was made. The – so if I may return to the – to this argument that the agreement, master's license provision, should only apply to – oh, by the way, Your Honor, I neglected to say that. I was planning on preserving five minutes. The argument that it applies only to synchronization agreements and compilation out is not only unsupported by any language in the contract, but by undisputed forensic evidence. It's been applied to record club agreements. These are agreements between the recording company and record clubs like Columbia House, where they provide the master recording to Columbia House. Columbia House then produces the copies itself and distributes them. Those have been treated under the master's license provision. That's the license of an entire album, not just a track from the album. Moreover, it's undisputed that appellees and other record companies apply the master's license provision to something called conditional downloads. Conditional downloads are downloads of entire albums. The only difference between them and a permanent download is that you can only use it as long as you're continuing to pay your monthly fee to the downloader, whereas with permanent downloads that are the issue here, you pay a one-time fee for downloading if you're the customer. So it's incorrect to say, as they do, that the master's license provision is limited to incorporating a part of an album in a movie, a TV program, or a compilation album. The fourth argument or the second argument that appellees make is that the court should defer to the jury's interpretation of the contract. Now, the ground rules for this issue are very well established both in California law and in Ninth Circuit precedent. Interpretation of the contract is ordinarily a question of law that appellate courts decide de novo. The exception, which is a limited one, applies where there are material disputes of extrinsic facts, such as something that was said in the negotiation, which would be a prime example. If there's a dispute about that, then you have a fact question. It's undisputed here that there is no controversy of that kind because the parties didn't discuss the master's license provision or the record sold provision. That's acknowledged in the briefs. So the only other dispute that you've disclosed... Well, there may be another question, and I know you want five minutes, and so I thought I'd better interrupt you before you use time so you can answer. Is there a problem regarding the evidence of custom and industry practice? I was just getting to that, so let me answer it. The answer is no. That's what they say. Let's assume you would argue no, but if the answer is yes, then it was proper for the court to let this go to trial, wouldn't it? Yes. If the answer was yes, it would be proper for the court to let it go to the jury. But let me be clear about one very important distinction, and that is it would be proper for the court to let the jury decide a facts question of what the custom and practice was, but the court would then interpret the contract. We cite cases, and this is on page 24 in footnote 9 of our brief, and this is a difference between California law and Ninth Circuit law. Under the cases cited in that footnote, where there is a fact dispute, whether it be custom and practice or what got said during the negotiations, the trier of fact decides who's right on the facts, and then the district court in the first instance and the Ninth Circuit de novo on appeal decide what the significance of that is for interpreting the contract. And that's where you run into not having made a judgment from motion as a matter of law. No, because we would be – if there – there isn't any fact dispute. I want to get back to that. But if there were, hypothetically, if there were, then you would take the facts as found by the jury. It's not a no substantial – let's suppose there was a dispute as to whether a particular statement was made in the negotiations. Then under the Ninth Circuit cases, you would take the facts as found by the jury favorable to the verdict. Whatever that side said was the truth, that's the truth. And then the court interprets the contract. Are you saying, then, that at the close of the evidence, if you had elicited facts along the lines of what Judge Ferris is suggesting, you were excused of saying, Judge, these are the facts. I'm entitled to judgment as a matter of law. You don't have to make that motion in that posture? In the context of a contract interpretation case, we're not asking – and by the way, we're not asking for judgment here. This case isn't over. If we are right in our contract interpretation, then the damage still has to be determined. All we ever – we're really appealing from the denial of summary judgment. The judge should have interpreted this contract and then been in a position to tell the jury what it meant. Right. I understand that's your primary argument. Judge Ferris's question, then, is if you had to produce extrinsic evidence, then are you – you're not excused, then, from making the requisite motion at the end of the evidence? Or if you fail to make one, you are – you're barred from arguing that the evidence supports you? No. The only time you have to make a JMOL motion is if you want to argue that the evidence doesn't support the other guy. That there is no evidence in the record, no substantial evidence or insufficiency of the evidence argument is lost if you don't make a JMOL argument. We're not making that argument. Mr. Falk, we have to look at this as the trial judge had to look at it. That's in order to – the trial judge denied both motions for summary judgment. Correct. When we look at it, do we have to decide, is this question – is the defendant 's position reasonable? Can't – is there any way – is it reasonable to – their argument reasonable? If it's so, then doesn't that have something to do with why the court would deny summary judgment for both sides? I would phrase it slightly differently. It's not whether their argument was reasonable. It's whether their argument was incorrect as a matter of law. There is – there is no custom and practice evidence in this record. Let me – let me go to that, because I've been speaking hypothetically. In this record, the only evidence in – that the judge pointed to in denying summary judgment and then later in denying our post-trial motion on the same point was that the – was opinion testimony by each side's expert as to what the contracts meant. If you go to the record sites in which they say there was a fact dispute in the extrinsic evidence, that's all you will find. There's no evidence of what people in the industry did that was in dispute. The evidence of what the people in the industry did is that this thing had been applied at the time of contracting to synchronization agreements and compilation albums. That's undisputed. It doesn't tell you anything, but it's relevant, but it's undisputed. But the only controverted evidence, which they call custom and practice evidence and isn't, is evidence of experts saying here's what it means, which is the ultimate question of law that the judge should have decided. He can't avoid his obligation to decide what a written agreement means simply because some witnesses tell him what the agreement means. If that were the case, issues of law could be made into something else by people giving opinion testimony about them. We don't do that in our system. And that, I assure you, is the only factual dispute in the record that has been proffered to make this an extrinsic fact dispute.  Well, let me tell you what the trial court said, and then you can go straight to it, and we're using up your time, as far as me, because you asked to save it. But you want this case decided properly, and we have to look at the record. Yes. Now, what the trial court said, based on the conflicting extrinsic evidence before the Court, the contracts are reasonably susceptible to more than one interpretation. That's what he said. That is what he said. And what you have to say to us is, no, that's wrong. With respect to the district judge, that is not correct. There is no dispute. But isn't that the question before us? Isn't that what we have to decide? Yes. You have to make your own independent judgment about that, of course. But when you look at the pieces of evidence that appellees cite to support the judge's statement, you will find only disputes of expert witnesses as to what these provisions mean, not they're – and by the way, there couldn't be custom and practice testimony that would tell you the answer to this question. At the time of contracting, digital downloading was not in commercial use, so there could have been no commercial practice relevant. You still look at the record and see if I'm wrong, but I think you will find that I'm not. I want you to keep your minute and a half. Thank you, Your Honor. Appreciate it. Good morning. At some point, cases as big amount of money as you're talking about turn on narrow issues quite often. And at some point, I wish you would define what, in your view, the narrow issue on which this case turns and do it while you're here so when he comes back and rebuttal he can tell us if you're wrong. So at some point, would you do that? I'd be very happy to, Your Honor. I'm going to write to that question. Good morning, Your Honors. May it please the Court. I am Glenn Pomerantz, and I'm here representing the appellees. I would like to first address the issue of waiver. I think there are two different forms of waiver that have occurred here, and most of the issues that FBT is presenting in this appeal have been waived. Then I'd like to turn to the extrinsic evidence. I'd like to look at that extrinsic evidence and show two things. First, there was a sharp conflict in that evidence, both in custom and trade usage evidence and in fact testimony, and also that there was more than sufficient evidence to support the jury's verdict in our interpretation. Let me start with the issue of waiver, and in particular, waiver based on the failure to file a JMOL motion. The parties agree that if the issue that's being presented on appeal involves the sufficiency of the evidence, you have to file a JMOL motion to preserve that issue. You have to file it. Now, Mr. Falk did say that they are appealing the summary judgment ruling. That is not what they said in their brief. There is nowhere in their briefs where they said they were appealing the summary judgment ruling. And they couldn't, because you'd have to be assessing the record in front of the jury to make a summary judgment. What was the fact record at that time? Never in their briefs do they analyze that fact record. Instead, they analyze the fact record that was developed at the trial. Well, they say here's the contract. This is what it says. It's unambiguous, and the judge should have granted the judgment for us. No, Your Honor. They did more than that, because they know you can't do that under California law. Under PG&E and other cases, the Court has to take extrinsic evidence first to find if the two sides' conflicting interpretations are reasonably susceptible interpretations of language. And then, if they do find that which this Court found, you have to look at the extrinsic evidence. What is the – what exactly is ambiguous about this, the other licenses provision? There are two provisions in the contract. One says records sold through normal retail channels, and the other is master's licensed.  The testimony at trial was uncontradicted, that there is never a situation where they both apply. That's what their experts said. He said they are inconsistent. Their experts said they are inconsistent. A download is a record, no dispute, and it is sold through a retailer, iTunes, to a consumer. That may be. But if it's notwithstanding anything else, this is how we're going to handle those master licenses. But the word notwithstanding would only apply if they both apply. And the uncontradicted – Well, who says? I mean, why is that? Because otherwise you never get to the notwithstanding. Well, listen. What I interpret notwithstanding to mean is it doesn't matter what the rest of it says. This is how we're going to handle master licenses. That would be true. Notwithstanding anything else, this is how we're going to handle that. What's ambiguous about that? Well, the ambiguity is that there's a provision above that also applies, and master's – And we're going to disregard that. Notwithstanding that, this is how we're going to handle master's. The answer to the question, Your Honor, is what does master's license mean to people in the industry? And we had testimony on that fact, extrinsic evidence offered on what master's license means. And that testimony was in conflict, and I can point, Your Honors, to the citations to the record where that evidence was in conflict. And it's exactly the same as the Court addressed in Wolfe with the term gross receipts or Ermolife with the term United Kingdom or in Warner Construction, where if there is used to interpret a particular phrase, and here the phrase is master's licensed. Does that mean – For any other use. Correct. And the extrinsic evidence that was in sharp conflict, was in sharp conflict, was whether that means all licenses no matter what or certain licenses, namely licenses to a third party who's going to incorporate the recording into their product. How would you get that out of this language? I don't see where that – The question is what does the term master's license mean? If you look at – Master's licensed by us to others for their manufacture and sale of records or for any other use. That seems pretty broad, especially notwithstanding anything else it says in the text. Your Honor, it is broad. But what we have extrinsic evidence that says you have a broad provision down here and a broad provision up here, and both sides agree there's never been a situation where they both apply and they are inconsistent. And where the transaction seems to fit into this one and seems to fit into this one, but they're mutually exclusive, then you have to go to the extrinsic evidence, see how the people in the industry have applied them, and when that's in sharp conflict, you then have to let the jury resolve that. That's exactly what happened here. This was a district judge who paid attention. He looked at the evidence. He saw it was in conflict. He saw that both of those provisions could on their face be read to apply to a download transaction, and so he considered the extrinsic evidence. He considered the extrinsic evidence as California law requires. He found it was in conflict, and he then therefore decided to leave it to the jury. And I'd like to, just because the record is not entirely clear from what Mr. Falk said, I'd like to show you exactly where that conflict arises, where the conflict in the expert testimony arose. FBT's expert, Mr. Berman, admitted that he testified how people in the industry understand the term master's license, and what he said was that historically that applied to any license. That's on day 4 p.m. at 85. Mr. Harleston then testified to something very different. What Mr. Harleston said was that everybody who negotiates recording agreements, both the artist representatives and the record company representatives, they know that that applies to only certain kinds of master licenses. He said that on day 5 p.m. at 96. And then he explained what kinds of transactions people in the industry understand master's license to refer to. And he says that that is masters that are embodied in the product of a licensee, such as a film or a TV show. He said that at day 6 a.m. at 6, and also day 5 p.m. at 116. That was custom and usage. He put it in the context of what people in the music industry think, what is typical, what everybody who negotiates contracts does and applies. It was definitely custom and usage testimony. Even Mr. Berman himself presented a conflict within his own testimony on the substantive issues, the core issues, because he initially first said that only one of the two provisions applies, and historically, it would be the master's license. But then on cross, we showed depot testimony of his to the jury in which he said this transaction involving iTunes, the consumer, and the record company is a record sold through a normal retail chain. Exactly the words of this contract. And if it's a hazard in his testimony, it's one provision or the other. And so as soon as he admits that it's a record sold through a normal retail channel, it can't be a master's license under his own testimony. He realized his mistake. So then he testified that, well, the word through in the contract really means to. And we cross-examined him on that change of testimony. There was a really serious credibility battle just within Mr. Berman's own testimony, and the jury had the right to believe the part of his testimony that supported our interpretation. There were also fact evidence that were in hot dispute, not just trade usage testimony. For example, Mr. Fox says that there was no testimony regarding any relevant negotiations. That's true in 1998. But it's not true in 2003. In 2003, a witness put on by FBT testified that Mr. Hoffman asked for a specific provision to be added to the contract that said downloads are record sold. Mr. Hoffman took the stand and said that conversation never occurred. That was a sharp conflict. Was it in the 2003 agreement? It was not in the 2003. The first time it was mentioned in 2004. It didn't get into the 2004. It did not get in. But it was relevant to contract interpretation for the very reason FBT argued at closing. Now, it does show up in the 2004 agreement. Yes, Your Honor. But apparently it's only to be used for purposes of escalations. But that was the issue that they were addressing, Your Honor. And the issue that was raised was how do you count downloads within the escalation part of the record sold provision? And what happened there, the issue there was that because downloads may have a different price than, for example, a compact disc, it wasn't clear how you would apply the top line price requirement for the escalations. And so what the parties did is they wrote in something that said, we're going to determine top line price for a download under the record sold provision based on its own top line price, not the CD top line price. The whole key was that proviso at the end there, which says, provided that the sales price concern falls within a top line sales price category, applicable to such method of sale. We believe, although it does specifically refer to escalations, you can't understand that clause as anything other than an admission that it's the record sold provision. Well, see, it says it's for the purposes of escalations. And then the last paragraph, paragraph 5, except as specifically modified the agreement, the previous agreement shall be unaffected and remain in full force in effect. Correct. So it looks to me like all this is doing is dealing with escalations and nothing else. It is only dealing with escalations. But the words chosen by the parties indicate their understanding that downloads are going to be covered by the, are covered by the record sold. You didn't need a change. You still have record sold. You still have master's license. Whatever those two provisions mean, they mean. But here, what the parties were indicating was that downloads were going to be covered by record sold. And true, they only had to address escalations because otherwise the contracts would apply. And under the interpretation that we had proffered, supported by extrinsic evidence, that would be a reasonable conclusion and consist, totally consistent with the 2004 amendment. The other area of conflict was in the pre-dispute performance. There was clear conflict in the pre-dispute performance. Here, we had sent royalty statements to FBT starting in 2003 that clearly showed we were paying under the record sold provision. We sent them two in 2003, two in 2004, two in 2005. Not once in 03 or 04 or 05 did they object. In 06, an auditor came in and said, hey, try this argument. You might be able to get more money this way. Is that what he said? Or did he say, I bought it and I think you're not getting paid, but you should? No, there's evidence in the record that he said this would be worth a significant amount of money. Right. If I can't try this, it was he found a defect in your payment. Fair. We then put Mr. Martin was on the stand. He's there, runs FBT, was involved in all the contract negotiations. And we cross-examined him on this issue. He came up with some excuses. He said, I was waiting for the audit. He said it was a very voluminous royalty statement. We challenged that in cross-examination. There was a credibility issue for the jury. If you believed Mr. Martin's excuses, pre-dispute performance didn't show any common interpretation. But if you disbelieved Mr. Martin's excuses, then you would find that his pre-dispute performance and FBT's pre-dispute performance supported our interpretation, because for years they knew we were paying under the record sold provision and didn't challenge it. I would like to briefly, if I could, go back to the issues of labor that Your Honor had mentioned here. And I want to go back to the question of whether this is a legal issue that is not required to be brought to the Court's attention as a JMOL motion. They have argued that this is a pure legal question. And it's true. If it's a pure legal question, you don't need to bring a JMOL motion. But what the courts mean by pure legal question is a question that doesn't require you to go look and assess the trial evidence. It's a pure legal question presented for the court to resolve. The issues here that are being raised by FBT clearly do involve an assessment of the trial record. What they're asking the court to do is look at the trial record, and then they raise the following question. Was the evidence on industry custom and practice sufficient to create a conflict for the jury? Or was the evidence sufficient to create a conflict with respect to pre-dispute performance? Or was the evidence sufficient with respect to the 2003 negotiations? Those are not purely legal questions. The way they try to get around that is they say, well, in fact, they were not disputing. In fact, there was no dispute in the evidence. But that's just assuming away the sufficiency question. The sufficiency question is whether the material extrinsic facts that were offered at trial create a conflict that the jury needed to resolve. And if it did, then you have to file a Rule 50A motion to preserve that issue for appeal. The Supreme Court in the Anderson v. Liberty lobby case looked at the standard for deciding a Rule 50 motion. What the court said is that that standard is whether the evidence presents a sufficient disagreement to require submission to a jury. That is exactly what's being raised here.  The question is whether there was a conflict in the extrinsic evidence. Counsel for FBT is arguing here today that there wasn't a conflict in the extrinsic evidence. There wasn't a conflict in the trade usage testimony. That very question had to go to the district judge. And for very good reason. You wanted to go to the district judge for exactly the reasons that the Supreme Court identified in Unitherm and that this Court has identified in NITCO. It's because that judge is sitting in the courtroom and he's hearing the evidence. He's seeing the documents. He's listening to the witnesses. And he is in the best position to determine whether there was a credibility dispute that's been presented. Unitherm and NITCO both say that this Court should require a first instance determination by the district court because the district court is in the best position to see if there was a credibility battle here. And if you avoid that by not filing a Rule 50A motion, you have not preserved that issue for appeal. And that's precisely what's going on here. The Unitherm and NITCO case also point to a second reason underlying Rule 50 and the requirements, and that is fairness to the defendant. If FBT had gone up and made the argument that they're entitled to judgment as a matter of law because the facts are not in dispute, and the judge had some indication that he was sympathetic to that view, then what the law says is that the defendant should be entitled to put on additional evidence to address whatever the concern is. If they said, for example, our expert had not given sufficient testimony about custom and usage, it was just ultimate legal conclusions, we could have asked him more questions. And the courts have identified that as a critical reason for enforcing Rule 50. It is not sufficient to say that, well, I made the same argument in summary judgment. That's what the Jaynes Court said. That's what the Tortu Court said. And that makes sense. It is a different factual record at trial. There was a different factual record at trial, and you want that motion made there. Now, there's an entirely different form of waiver that also occurred here that was not mentioned in the – by FBT's counsel, and that's the waiver that occurred at the conference in which we were settling the jury instructions. This was not just acquiescence. There's absolutely no ambiguity of what happened in that conference. There was a jury instruction that had been proposed before trial with a blank in it to fill in later in trial. That was Instruction 25a. And the heading on that instruction said, No conflict in extrinsic evidence. Court interprets contract. And the judge asked a question in that conference to settle the jury instructions. He said, is 25a not applicable? And FBT's counsel gave an unambiguous response. Counsel said, yeah, we believe 25a is not applicable. That's not acquiescence. That is not acquiescence. The judge is asking an honest question, and he expects to get an honest and complete answer back. And the answer was, it's not applicable. So they never asked this Court for a ruling as a judgment as a matter of law in the jury instructions or ever before this case was submitted to the jury. They never said, look at the trial evidence. No facts are in dispute. We should win. That never happened. And that's a waiving of virtually most of their arguments on this appeal. They tried to escape that argument by arguing futility. And there is a futility exception, but it can't apply here for three reasons. First, the judge asking the question shows that the judge didn't believe it was futile. He asked the question, is 25a not applicable? Second, FBT's conduct shows that it didn't think it was futile to re-raise questions during trial, even though they made earlier arguments before trial based on the evidence that existed at that time. I'll give you three examples. The pretrial conference in this case occurred 10 days after the summary judgment ruling had been issued. At that conference, FBT's counsel, not Mr. Clark, trial counsel, raised the question of whether download agreements are licenses as a matter of law. That was an issue that the judge had denied in his summary judgment motion as a factual issue. Counsel said, I may raise that again at the close of evidence. Clearly indicating that although the issue had been denied at the summary judgment stage, he may raise it again. That's at excerpt of records 443. Then they did make a JMOL motion on the second cause of action, just not the first. That second cause of action was also the subject of a summary judgment motion, which was denied. But that didn't stop them from bringing a JMOL motion on that issue. And third, they constantly came back and tried to revisit the eliminator rulings. So you're supposed to look at the record and try to look at the record and see if it appears that it would be futile to re-raise the issue. And FBT's conduct itself shows that they didn't think it was futile to re-raise these kinds of issues. And third, it's not futile to raise the issue at the end of trial when the earlier ruling was based on a different record, the summary judgment record. And that's clearly what happened here. So there has been a waiver of virtually all of the issues that are being raised on this appeal, certainly all of the contract interpretation issues. I think I am just about out of time, and I think I've hit all the subjects. Thank you, Your Honor. Roberts, thank you. Back to you. To take a contract interpretation issue out of the issue of law category, the objecting in this instance have a burden of showing a material extrinsic fact dispute. It's not a matter as a ‑‑ it's not a matter of requiring anybody to look at the whole record and see if there's some substantial evidence in the record to support a jury verdict. It's a matter of looking at whatever they say is the extrinsic fact dispute and seeing if it is, if it's a dispute and if it's material to the issue of contract interpretation. That makes this quite different. Moreover, we are entitled and do and have appealed from the denial of summary judgment. The evidence is the same. It's the same people saying the same things in the summary judgment papers, which have a deposition excerpt, saying the same thing on the witness stand that they said in the deposition, and there's no extrinsic fact dispute. We summarized the record for you on this point on pages 17 to 20 of our reply brief, and there in a pretty compact way. We take on each of the proffered extrinsic fact disputes and show why they're not material extrinsic fact disputes. Counsel characterizes the testimony of Mr. Berman and their expert as testimony about what people in the industry thought these provisions mean and how they applied them. It's not correct to say that. Those excerpts or those citations, when you go and look at them, are testimony by Mr. Berman and their expert, Mr. Carlson, as to what each of them believe those provisions mean. All of that was immaterial. All of it was inadmissible. Under the cases that we cite, they cannot create an extrinsic fact dispute to take this case out of the general rule that contract interpretation is an issue for the Court. Thank you. Roberts. Thank you.  The case just argued is submitted. Good morning. All rise. This Court with this session stands adjourned.
judges: Farris, Hall, Silverman